1
2
3
4
5
6
7
8                    UNITED STATES DISTRICT COURT

9              FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   SAMUEL SANDIGO MANZANAREZ,              No. 1:25-cv-01536-DC-CKD (HC)

12                Petitioner,

13        v.                                 ORDER GRANTING MOTION FOR A
                                             TEMPORARY RESTRAINING ORDER
14   PAMELA BONDI, et al.
                                             (Doc. No. 2)
15                Respondents.

16

17

18        This matter is before the court on Petitioner Samuel Sandigo Manzanarez's motion for a

19   temporary restraining order (Doc. No. 2) filed in conjunction with his petition for a writ of habeas

20   corpus brought under 28 U.S.C. § 2241 challenging his ongoing immigration detention. (Doc. No.

21   1.) Having considered Petitioner's motion and the parties' briefing (Doc. Nos. 2, 6–7), the court

22   grants Petitioner's motion for a temporary restraining order.

23                                 **BACKGROUND**

24   **A.    Factual Background**

25        Petitioner is a citizen of Nicaragua who entered the United States on approximately

26   January 12, 2023, at which time he was arrested and placed into custody by United States

27

28
                                         1

1  Immigration and Customs Enforcement ("ICE").[1] (Doc. Nos. 1 at ¶¶ 2, 11; 1-4.) That same day,

2  ICE released Petitioner from custody through an order of release on recognizance ("OREC"),

3  signed by Petitioner and an ICE official. (Doc. No. 1-4.) The OREC states Petitioner had been

4  arrested and placed in removal proceedings but was being released "[i]n accordance with section

5  236 of the Immigration and Nationality Act and the applicable provisions of Title 8 of the Code

6  of Federal Regulations." (Doc. Nos. 1 at ¶¶ 2, 5; 1-4.) Petitioner alleges ICE determined he was

7  not a flight risk or danger to the community before releasing him. (Doc. No. 1 at ¶ 2.) The OREC

8  imposed various conditions, including in-person reporting and a requirement that Petitioner must

9  not violate any local, state, or federal laws or ordinances. (Doc. No. 2-3 at 1.) Petitioner contends

10  he complied with the terms of the OREC and has no criminal record. (Doc. No. 1 at ¶ 4.)

11       The United States Department of Homeland Security ("DHS") subsequently commenced

12  removal proceedings against Petitioner by filing a Notice to Appear in the Portland Immigration

13  Court. (*Id.* at ¶ 3.) Thereafter, Petitioner applied for asylum. (*Id.* at ¶¶ 3, 6.) On August 29, 2024,

14  an immigration judge denied Petitioner's asylum application and ordered him removed to

15  Nicaragua. (*Id.* at ¶ 6.) Thereafter, Petitioner filed a timely appeal of the immigration judge's

16  decision with the Board of Immigration Appeals, which remains pending. (*Id.*)

17       On June 14, 2025, ICE detained Petitioner during his regularly scheduled check-in

18  appointment. (*Id.* at ¶ 7.) Petitioner alleges he did not receive notice of ICE's intent to detain him

19  or any information about the reason the OREC was revoked. (*Id.* at ¶ 8.) ICE transferred

20  Petitioner from Oregon, his state of residence, to the Desert View Annex Detention Center in

21  Adelanto, California. (*Id.* at ¶ 7.) ICE later transferred Petitioner to the California City Detention

22  Facility in California City, California, where he is currently detained. (*Id.*)

23  **B.    Procedural Background**

24       On November 11, 2025, Petitioner filed a petition for writ of habeas corpus and the

25  pending motion. (Doc. Nos. 1, 2.) Petitioner raises the following claims in his petition: (1)

26

27  [1] In their opposition, Respondents contend Petitioner entered the United States on or about
   December 10, 2022. (Doc. No. 6 at 2.) However, Respondents provide no evidence to support
28  their contention. (*Id.*)

1  violation of his substantive due process rights under the Fifth Amendment; (2) violation of his

2  procedural due process rights under the Fifth Amendment; and (3) unlawful arrest in violation of

3  the Fourth Amendment. (Doc. No. 1 at 9–14.) The following day, the court issued a briefing

4  schedule on Petitioner's motion. (Doc. No. 4.) On November 14, 2025, Respondents Pamela

5  Bondi, Kristi Noem, Christopher Chestnut, Sergio Albarran, and DHS ("Respondents") filed a

6  timely opposition to the motion.[2] (Doc. No. 6.) On November 17, 2025, Petitioner filed a timely

7  response thereto. (Doc. No. 7.)

8  **LEGAL STANDARDS**

9      The standard governing the issuing of a temporary restraining order is "substantially

10  identical" to the standard for issuing a preliminary injunction. *Stuhlbarg Int'l Sales Co. v. John D.*

11  *Brush & Co.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001). To obtain either form of injunctive relief, the

12  moving party must show: (1) a likelihood of success on the merits; (2) a likelihood of irreparable

13  harm to the moving party in the absence of preliminary relief; (3) that the balance of equities tips

14  in favor of the moving party; and (4) that an injunction is in the public interest. *Winter v. Nat.*

15  *Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008).

16      A party seeking injunctive relief must make a showing on all four prongs of the *Winter*

17  factors to obtain injunctive relief. *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th

18  Cir. 2011); *see Lopez v. Brewer*, 680 F.3d 1068, 1072 (9th Cir. 2012) ("A preliminary injunction

19  is 'an extraordinary and drastic remedy, one that should not be granted unless the movant, by a

20  clear showing, carries the burden of persuasion.'") (quoting *Mazurek v. Armstrong*, 520 U.S. 968,

21  972 (1997)).

22  /////

23

24  [2] In their opposition, Respondents move to strike and dismiss "all unlawfully named officials
   under § 2241." (Doc. No. 6, n. 1.) Where an individual brings a "core habeas" petition

25  challenging present physical confinement, the immediate custodian rule states that the proper
   respondent is the immediate custodian. *Doe v. Garland*, 109 F.4th 1188, 1197 (9th Cir. 2024).

26  Petitioner has properly named their immediate custodian, the facility administrator of the
   California City Detention Facility, Christorpher Chestnut. (Doc. No. 1 at ¶ 15.) However, if

27  Respondents seek to dismiss the other Respondents from this action, they must do so in a
   properly noticed motion.

28

**DISCUSSION**

In his motion, Petitioner asks the court to order his immediate release. (Doc. No. 2-1 at 12.) Further, Petitioner asks the court to enjoin Respondents from re-detaining him: (1) absent further order of this court; or (2) absent the provision of a pre-deprivation hearing before a neutral arbiter. (*Id*.)

**A.      Likelihood of Success on the Merits**

1.      Statutory Framework

The complex statutory framework governing the detention and removal of inadmissible noncitizens in this country is at issue here. Sections 1225 and 1226 govern the detention of inadmissible noncitizens who have been placed in removal proceedings. 8 U.S.C. §§ 1225, 1226. Respondents contend Petitioner is a noncitizen subject to mandatory detention pursuant to section 1225(b)(2). (Doc. No. 6 at 8–10.) Petitioner disagrees, instead asserting his detention is governed by section 1226 and is discretionary. (Doc. No. 7 at 3, 8.)

Section 1226(a) is the "usual removal process" for inadmissible noncitizens. *Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 108 (2020). The noncitizen's removal commences with the filing of a Notice to Appear with the Immigration Court, initiated under 8 U.S.C. § 1229(a). *Ortiz Donis v. Chestnut*, No. 25-cv-01228-JLT-SAB, 2025 WL 2879514, at *3 (E.D. Cal. Oct. 9, 2025). The removal process provides for an evidentiary hearing before an immigration judge to allow the noncitizen to show he should not be removed. *Thuraissigiam*, 591 U.S. at 108. The noncitizen is permitted to apply for asylum if he would be persecuted if returned to his home country. *Id*. (citing 8 U.S. § 1229a(b)(4); 8 C.F.R. § 1240.11(c)(2020).) If asylum is not granted, and the noncitizen is ordered removed, the noncitizen can appeal the order to the Board of Immigration Appeals. *Id*. (citing 8 U.S. §§ 1229a(c)(5), 1252(a).)

Section 1226 provides a discretionary detention scheme while removal proceedings are pending. 8 U.S.C. § 1226. Specifically, during the pendency of removal proceedings, the government may continue to detain the individual or may release him on bond or conditional parole. 8 U.S.C. § 1226(a)(2)(A)-(B). When a person is apprehended under section 1226, an ICE officer makes an initial custody determination, and the noncitizen will be released upon a

4

showing "to the satisfaction of the officer that such release would not pose a danger to property or persons, and that the [noncitizen] is likely to appear for any future proceeding." *Diaz v. Garland*, 53 F.4th 1189, 1196 (9th Cir. 2022) (citing 8 C.F.R. § 236.1(c)(8)). If the noncitizen is detained under section 1226(a), he is entitled to a bond hearing. *Jennings v. Rodriguez*, 583 U.S. 281, 306 (2018).

As to noncitizens seeking admission into the United States, section 1225 provides for mandatory detention of certain individuals and, in some cases, expedited removal. 8 U.S.C. § 1225; see also *Ortiz Donis*, 2025 WL 2879514, at *4 ("While '§ 1226 applies to aliens already present in the United States,' U.S. immigration law also 'authorizes the Government to detain certain aliens seeking admission into the country under §§ 1225(b)(1) and (b)(2),' a process that provides for expedited removal.") (citing *Jennings*, 583 U.S. at 303.) Section 1225(b)(2)(A) provides:

> Subject to subparagraphs (B) and (C), in the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained for a proceeding under section 1229a of this title.[3]

An applicant for admission is defined as a noncitizen "present in the United States who has not been admitted or who arrives in the United States (whether or not at a designated port of arrival and including an alien who is brought to the United States after having been interdicted in international or United States waters)." 8 U.S.C. § 1225(a)(1).

"Until this year, the DHS has applied [section] 1226(a) and its discretionary release and review of detention to the vast majority of noncitizens allegedly in this country without valid documentation." *Salcedo Aceros v. Kaiser*, No. 25-cv-06924-EMC, 2025 WL 2637503, at *3. Respondents concede that until recently the government interpreted section 1226(a) to be "available detention authority" for noncitizens that were present in the country without being admitted or paroled. (Doc. No. 6 at 7.) However, according to Respondents, "[i]n view of legal

---

[3] Subparagraph (B) of 8 U.S.C. § 1225(b)(2) sets forth exceptions to subparagraph (A). Subparagraph (C) of the same section addresses the [treatment] of [noncitizens] arriving from contiguous territory." 8 U.S.C. § 1225 b)(2)(C). Neither subparagraph appears to apply here.

1    developments, the government has determined that [its] interpretation [of section 1226(a)] was

2    incorrect" and section 1225 "is the sole applicable immigration detention authority for all

3    applicants for admission." (*Id.* at 8.)  Following this development, in 2025, DHS began directing

4    federal immigration officials to seek expedited removal of noncitizens pursuant to section

5    1225(b)(2). *Garcia v. Noem*, No. 25-cv-02180-DMS-MMP, 2025 WL 2549431, at *5 (S.D. Cal.

6    Sept. 3, 2025); *Salcedo Aceros*, 2025 WL 2637503, at *4. However, the legal arguments

7    Respondents rely upon to support their position that section 1225 applies here have been

8    consistently rejected by a majority of courts in this district, and courts across the country. *See*

9    *Valencia Zapata v. Kaiser,* No. 25-CV-07492-RFL, 2025 WL 2741654, at *10 (N.D. Cal. Sept.

10   26, 2025) (citing *Salcedo Aceros*, 2025 WL 2637503, at *8 (collecting cases). Instead, those

11   courts have generally held that section 1226 rather than section 1225 is the appropriate section to

12   apply in cases in which a noncitizen is already living in the United States. *See C.A.R.V. v.*

13   *Wofford*, No. 25-cv-01395-JLT-SKO, 2025 WL 3059549, at *8 (E.D. Cal. Nov. 1, 2025) (finding

14   section 1226 applied when "petitioner has been present in the United States for approximately

15   four years and was released on his own recognizance well before Respondents adopted the new

16   interpretation of the governing statutes").

17        The majority view rejects the government's new interpretation of the application of

18   section 1225 as the sole applicable immigration detention authority for *all* inadmissible

19   noncitizens. Consistent with the majority view, Petitioner's OREC released him in accordance

20   with section 236 of the Immigration and Nationality Act [section 1226]. (Doc. No. 1-4.) "Having

21   elected to proceed with full removal proceedings under § 1226, Respondents cannot now reverse

22   course and institute § 1225 expedited removal proceedings." *Clavijo v. Kaiser*, No. 25-cv-06248-

23   BLF, 2025 WL 2419263, at *4 (N.D. Cal. Aug. 21, 2025). Accordingly, Petitioner is likely

24   subject to the discretionary detention scheme set forth in section 1226.

25        2.    Due Process

26        The Due Process Clause protects persons in the United States from being deprived of life,

27   liberty, or property without due process of law. U.S. Const. amend. V. It is firmly established that

28   these protections extend to noncitizens present in the United States. *See Zadvydas v. Davis*, 533

6

1  U.S. 678, 693 (2001) ("[T]he Due Process Clause applies to all 'persons' within the United

2  States, including aliens, whether their presence here is lawful, unlawful, temporary, or

3  permanent."); *Wong Wing v. U.S.*, 163 U.S. 228, 238 (1896) ("It must be concluded that all

4  persons within the territory of the United States are entitled to the protection guarantied by [the

5  Fifth Amendment], and that even aliens shall not . . . be deprived of life, liberty, or property

6  without due process of law.").

7  　　　Courts examine procedural due process claims in two steps. *Berrios v. Albarran*, No. 25-

8  cv-01544-TLN-CSK, 2025 WL 3171140, at *2 (E.D. Cal. Nov. 13, 2025) (citing *Ky. Dep't of*

9  *Corr. v. Thompson*, 490 U.S. 454, 460 (1989)). The first step asks whether a protected liberty

10  interest under the Due Process Clause exists. *Id*. The second step "examines the procedures

11  necessary to ensure any deprivation of that protected liberty interest accords with the

12  Constitution." *Id*.

13  　　　The Due Process clause applies to noncitizens in this country in connection with removal

14  proceedings even if their presence is unlawful or temporary. *See Zadvydas*, 533 U.S. at 693. Since

15  Petitioner has a protected liberty interest, the court must determine the procedures necessary to

16  ensure any deprivation of that protected liberty interest accords with the Constitution. To make

17  that determination, the court applies the three-part test established in *Mathews v. Eldridge*, 424

18  U.S. 319 (1976). *See Diaz*, 53 F. 4th at 1206–07 (applying the *Mathews* test to a procedural due

19  process challenge to a detention under 8 U.S.C. § 1226, explaining that "*Mathews* remains a

20  flexible test that can and must account for the heightened governmental interest in the

21  immigration detention context"); *see also Hernandez v. Sessions*, 872 F.3d 976, 993 (9th Cir.

22  2017) (applying *Mathews* factors in immigration detention context). The *Mathews* test considers

23  three factors: (1) the private interest affected; (2) the risk of an erroneous deprivation; and (3) the

24  government's interest. 424 U.S. at 335.

25  　　　Turning to the first *Mathews* factor, Petitioner has a private interest in remaining free from

26  detention. "Freedom from imprisonment—from government custody, detention, or other forms of

27  physical restraint—lies at the heart of the liberty [the Due Process] Clause protects." *Zadvydas*,

28  533 U.S. at 690. Here, Petitioner alleges he was released on his own recognizance for over two

1   years and complied with his OREC conditions during that time. Nonetheless, he has been

2   detained for over five months without being afforded a bond hearing. Thus, this factor favors a

3   finding that Petitioner's private interest has been affected by his detention.

4         The second *Mathews* factor, the risk of erroneous deprivation to Petitioner, also weighs in

5   Petitioner's favor. *See A.E. v. Andrews*, No. 25-cv-00107-KES-SKO, 2025 WL 1424382, at *5

6   (E.D. Cal. May 16, 2025) ("The risk of an erroneous deprivation [of liberty] is high" when "[the

7   petitioner] has not received any bond or custody redetermination hearing."). Petitioner alleges he

8   has not been provided a bond hearing, which has not been disputed. As noted above, noncitizens

9   "detained under § 1226(a) receive bond hearings at the outset of detention" *Jennings*, 583 U.S. at

10  306.  Detention under section 1226 is justified when a noncitizen poses a flight risk or a danger to

11  the community. *Zadvydas*, 533 U.S. at 690; *Padilla v. U.S. Immigr. & Customs Enf't*, 704 F.

12  Supp. 3d 1163, 1172 (W.D. Wash. 2023). Here, Petitioner contends he has no criminal record and

13  has been in compliance with the OREC conditions. Respondents appear to argue that Petitioner

14  could become a flight risk "given [his] prior removal order." (Doc. No. 6 at 13.) However,

15  Respondents present no evidence that Petitioner is a flight risk. In fact, the record demonstrates

16  the opposite.

17        Turning to the third *Mathews* factor, Respondents assert the government has a strong

18  interest in the steady enforcement of its immigration laws. (Doc. No. 6 at 12.) The court

19  acknowledges this interest but recognizes that the government's interest in detaining Petitioner

20  without any procedural protections is substantially "low." *Ortega v. Bonnar*, 415 F. Supp. 3d 963,

21  970 (N.D. Cal. 2019); *Doe v. Becerra*, 787 F. Supp. 3d 1083, 1094 (E.D. Cal. 2025). Custody

22  hearings in immigration court are routine and impose a "minimal" cost on the government. *Doe*,

23  787 F. Supp. 3d at 1094. "If the government wishes to re-arrest [petitioner] at any point, it has the

24  power to take steps toward doing so; but its interest in doing so without [any procedural

25  protections] is low." *Ortega*, 415 F. Supp. 3d at 970.

26        On balance, the *Mathews* factors favoring Petitioner show a likelihood of success on the

27  merits that due process requires a bond hearing prior to his re-detention. Therefore, the court finds

28  that Petitioner has established a likelihood of success on the merits of his due process claim.

**B. Irreparable Harm**

It is well established that the deprivation of constitutional rights 'unquestionably constitutes irreparable injury.'" *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012) (quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976)). Where, as here, the "alleged deprivation of a constitutional right is involved, most courts hold that no further showing of irreparable injury is necessary." *Warsoldier v. Woodford*, 418 F.3d 989, 1001–02 (9th Cir. 2005) (quoting Wright, Miller, & Kane, Federal Practice and Procedure, § 2948.1 (2d ed. 2004)). The Ninth Circuit has also noted that "unlawful detention certainly constitutes 'extreme or very serious' damage, and that damage is not compensable in damages." *Hernandez*, 872 F.3d at 999.

Therefore, the second *Winter* factor weighs in favor of granting Petitioner's request for injunctive relief.

**C. Balance of the Equities and Public Interest**

The court now turns to the last two *Winter* factors. The balance of the equities and public interest analyses merge when the government is the opposing party, as is the case in this action. *See Drakes Bay Oyster Co. v. Jewell,* 747 F.3d 1073, 1092 (9th Cir. 2014) (citing *Nken v. Holder*, 556 U.S. 418, 435 (2009)).

"Just as the public has an interest in the orderly and efficient administration of this country's immigration laws, [] the public has a strong interest in upholding procedural protections against unlawful detention." *Vargas v. Jennings*, No. 20-cv-5785-PJH, 2020 WL 5074312, at *4 (N.D. Cal. Aug. 23, 2020) (internal quotation omitted); *see also Preminger v. Principi,* 422 F.3d 815, 826 (9th Cir. 2005) ("Generally, public interest concerns are implicated when a constitutional right has been violated, because all citizens have a stake in upholding the Constitution."). Petitioner has demonstrated that he is likely unlawfully detained in violation of his due process rights and is suffering irreparable harm as a result.

On the other hand, the burden on Respondents in releasing Petitioner from detention is minimal. "[T]he only potential injury that the government faces is a 'short delay' in detaining Petitioner[] if it 'ultimately demonstrates to a neutral decisionmaker' that their detention is necessary to prevent flight or danger to the community." *Valencia Zapata*, 2025 WL 2741654, at

*13 (quoting *Salcedo Aceros*, 2025 WL 2637503, at *14). While the government does have a compelling interest in the enforcement of immigration laws as addressed above, Respondents cannot reasonably assert that the public and government will be harmed in any legally cognizable sense by being enjoined from violating Petitioner's due process rights, which is the case here. *See Zepeda v. U.S. Immigr. & Nat. Serv.*, 753 F.2d 719, 727 (9th Cir. 1983) (finding "the INS cannot reasonably assert that it is harmed in any legally cognizable sense by being enjoined from constitutional violations.").

Accordingly, the Court finds that the balance of equities and public interest weighs in favor of a preliminary injunction and consequently, all four *Winter* factors weigh in favor of Petitioner.

**D. Bond**

"Federal Rule of Civil Procedure 65(c) permits a court to grant preliminary injunctive relief 'only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained.'" *Johnson v. Couturier*, 572 F.3d 1067, 1086 (9th Cir. 2009) (quoting Fed. R. Civ. P. 65(c)). "Despite the seemingly mandatory language, 'Rule 65(c) invests the district court with discretion as to the amount of security required, if any.'" *Id.* (quoting *Jorgensen v. Cassiday*, 320 F.3d 906, 919 (9th Cir. 2003)). "In particular, '[t]he district court may dispense with the filing of a bond when it concludes there is no realistic likelihood of harm to the defendant from enjoining his or her conduct.'" *Johnson*, 572 F.3d at 1086 (quoting *Jorgensen*, 320 F.3d at 919).

Petitioner asserts the court should not require him to provide security because "there is no realistic likelihood of harm to Respondents if the [c]ourt grants the requested [motion], and it would pose a significant hardship on [him] . . . to have a bond imposed." (Doc. No. 2-1 at 11.) In opposition, Respondents request that the court require Petitioner to post security during the pendency of the court's order in an amount the court considers appropriate under Rule 65(c). (Doc. No. 6 at 14.)

/////

/////

The court finds that no security is required here. Courts regularly waive security in cases like this one. *Diaz v. Brewer*, 656 F.3d 1008, 1015 (9th Cir. 2011); *Lepe v. Andrews*, No. 25-cv-01163-KES-SKO, 2025 WL 2716910, at \*10 (E.D. Cal. Sep. 23, 2025); *Pinchi v. Noem*, No. 25-cv-05632-RMI-RFL, 2025 WL 1853763, at \*4 (N.D. Cal. Jul. 4, 2025).

### CONCLUSION

1.  Petitioner's motion for temporary restraining order (Doc. No. 2) is GRANTED;

2.  Petitioner Samuel Sandigo-Manzanarez shall be released immediately from the Respondents' custody. Respondents shall not impose any additional restriction on him, such as electronic monitoring, unless that is determined to be necessary at a future pre-deprivation/custody hearing;

3.  If the government seeks to re-detain Petitioner, it must provide no less than seven (7) days' notice to Petitioner and must hold a pre-deprivation bond hearing before a neutral arbiter pursuant to section 1226(a) and its implementing regulations, at which Petitioner's eligibility for bond must be considered.

4.  Respondents are ORDERED TO SHOW CAUSE no later than **November 25, 2025**, as to why this Court should not issue a preliminary injunction on the same terms as this Order. Petitioner may file an opposition by no later than **November 28, 2025**. Respondents may file a reply to Petitioner's opposition by no later **December 2, 2025**. If the parties agree upon a less demanding briefing schedule, the court will consider the parties' proposal.

IT IS SO ORDERED.

Dated:  **November 20, 2025**

Dena Coggins
United States District Judge